# 24-2881-BK

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤ ◄◄

IN RE: 307 ASSETS LLC,

*Debtor.*

SEI INSIEME LLC,

*Plaintiff-Appellant,*

*v.*

307 ASSETS LLC,

*Defendant-Appellee.*

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

H. Bruce Bronson, Jr.
BRONSON LAW OFFICES, P.C.
*Attorneys for Plaintiff-Appellant*
480 Mamaroneck Avenue
Harrison, New York 10528
914-269-2530



PHP (212) 719-0990
appeals@phpny.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Sei Insieme LLC, through its undersigned counsel, states that it has no parent company and no publicly-held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................i

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ...............................................................1

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES PRESENTED........................................2

STATEMENT OF THE CASE.................................................................2

STATEMENT OF FACTS ......................................................................3

SUMMARY OF ARGUMENT ...............................................................5

STANDARD OF REVIEW .....................................................................8

ARGUMENT ........................................................................................11

    1.   THE DISTRICT COURT ERRED IN ITS APPLICATION
          OF METROMEDIA AND THE CHATEAUGAY FACTORS ...............11

        A.  Equitable Mootness Required Review of The Merits .........................11

        B.  Appellant Made Diligent Efforts to Seek a Stay .................................11

        C.  Avoidance of A Lien Under 363(f) Has A Simple
            Monetary Remedy and There was No "Comprehensive
            Change in Circumstances" ..................................................................12

        D.  Appellant Satisfied the *Chateaugay* Factors ......................................13

            1.   The First *Chateaugay* Factor Is Satisfied Because
                  Monetary Relief Can Be Granted ................................................14

        E.  Bad Faith Requires an Exception to Equitable Mootness...................17

CONCLUSION ................................................................................................19

CERTIFICATE OF COMPLIANCE .................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apollo Glob. Mgmt., LLC v. Bokf, NA (In re MPM Silicones, L.L.C.)*,
   874 F.3d 787 (2d Cir. 2017) ..................................................8

*ASSF IV AIV B Holdings III, L.P. v. Empire Generating Co., LLC*
   *(In re Empire Generating Co., LLC)*,
   No. 19-CV-5721 (CS), 2020 U.S. Dist. LEXIS 50040
   (S.D.N.Y. Mar. 23, 2020) ..............................................4, 11

*Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm.*
   *(In re Pac. Lumber Co.)*,
   584 F.3d 229 (5th Cir. 2009) ................................................6

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
   841 F.2d 92 (4th Cir. 1988) ................................................17

*Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*,
   10 F.3d 944 (2d Cir. 1993) ................................13, 14, 16, 17

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*,
   391 B.R. 25 ..................................................................15

*Deutsche Bank AG, London Branch v. Metromedia Fiber*
   *Network, Inc. (In re Metromedia Fiber Network)*,
   416 F.3d 136 (2d Cir. 2005) ..........................................11, 12

*GLM DFW, Inc. v. Windstream Holdings, Inc.*
   *(In re Windstream Holdings, Inc.)*,
   838 F. App'x 634 (2d Cir. 2021) ........................................5, 6

*In re BGI, Inc.*,
   772 F.3d 102 (2d Cir. 2014) ................................................13

*In re Roberts Farms, Inc.*,
   652 F.2d 793 (9th Cir. 1981) ..............................................18

iv

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
  598 U.S. 288, 143 S. Ct. 927 (2023)....................................................18

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co.*
  (*In re Thorpe Insulation Co.*),
  677 F.3d 869 (9th Cir. 2012) .............................................................17

*One2One Communs., LLC v. Quad/Graphics, Inc.*,
  805 F.3d 428 (3d Cir. 2015) .........................................................10, 12

*Pursuit Holdings (NY), LLC v. Piazza*
  (*In re Pursuit Holdings (NY), LLC*),
  845 F. App'x 60 (2d Cir. 2021) ............................................................9

*R2 Invs., LDC v. Charter Communs., Inc.*
  (*In re Charter Communs., Inc.*),
  691 F.3d 476 (2d Cir. 2012) .......................................................*passim*

*Sei Insieme LLC v. 307 Assets LLC (In re 307 Assets LLC)*,
  665 B.R. 214 (S.D.N.Y. 2024) .......................................................2, 14

*Trs. of the Mosaic & Terrazzo Welfare, Pension, Annuity
  & Vacation Funds v. High Performance Floors, Inc.*,
  233 F. Supp. 3d 329 (E.D.N.Y. 2017) ...............................................10

## Statutes

11 U.S.C. § 363(f) ...............................................................................15

11 U.S.C. § 363(m) ......................................................................17, 18

28 U.S.C. § 158(a)(1)............................................................................1

28 U.S.C. § 158(d)(1)........................................................................1, 2

28 U.S.C. § 1291 .................................................................................2

**Other Authorities**

Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of
 Chapter 11's Checks and Balances*, 100 TEX. L. REV.
 1079, 1121 (2022) ................................................................6

Bruce A. Markell, *The Needs of the Many: Equitable Mootness'
 Pernicious Effects*, 93 AM. BANKR. L. J. 377, 381 (2019) .............................6

## PRELIMINARY STATEMENT

Sei Insieme LLC, (the "Appellant") appeals a district court order dismissing as equitably moot its appeal form the bankruptcy court. In the chapter 11 case of 307 Assets LLC (the "Debtor") the bankruptcy court approved a sale of the Debtor's only asset, for far less than it was worth, to the first mortgage holder who was also an insider of the Debtor. The result was a plan effectively stripping and extinguishing Appellant's second lien on the property without applying the proper standard of entire fairness to the sale process.

This miscarriage of justice was furthered when the Southern District of New York ("District Court") dismissed the appeal as equitably moot. The Debtor and its insider stakeholders directed by its principal were rewarded for knowingly rushing to close their unlawful transaction in a race to manufacture mootness. The application of equitable mootness was an abuse of discretion in this simple case where Appellant properly sought a stay of the sale. (A804)

## JURISDICTIONAL STATEMENT

The District Court's order dismissing the appeal as equitably moot is a final order entered under 28 U.S.C. § 158(a)(1). Accordingly, the Court has jurisdiction over this appeal under 28 U.S.C. § 158(d)(1) with respect to the District Court's dismissal of the appeal as equitably moot.

Appellant timely filed a notice of appeal of the District Court judgment on October 28, 2024. This Court has jurisdiction over the appeal from the District Court's judgment under 28 U.S.C. §§ 158(d)(1) and 1291.

## STATEMENT OF THE ISSUES PRESENTED

1. Did the District Court err in determining Appellant's appeal was equitably moot?

2. Did the District Court err in declining to address the merits of the appeal because the Bankruptcy Court applied the wrong legal standard on a sale to an insider?

3. Did the District Court err in declining to address the merits of the appeal where there is evidence of bad faith?

## STATEMENT OF THE CASE

This is an appeal from an order of Chief United States District Judge Laura Taylor Swain dated September 30, 2024, dismissing the appeal from the Order Confirming Chapter 11 Plan of Debtor by the Bankruptcy Court for the Southern District of New York on August 21, 2023, on the basis of equitable mootness. *Sei Insieme LLC v. 307 Assets LLC (In re 307 Assets LLC)*, 665 B.R. 214 (S.D.N.Y. 2024). (SPA1)[1]

---

[1] "A-##" refers to the Appendix and "SPA-##" refers to the Special Appendix

## STATEMENT OF FACTS

The Debtor's bankruptcy was a simple single asset real estate case.[2] (A79) The Debtor's primary creditors consisted of the first mortgage and a second mortgage held by Appellant on the property located at 307-309 Sixth Avenue, New York, NY (the "Property"). (A85) Prior to the bankruptcy, the Debtor's first mortgage came to be held by an entity that shared common ownership and operated as an *alter ego* of the Debtor controlled by the Debtor's insider, William Schneider ("Schneider"). The Debtor's *alter ego* took over the prosecution of the foreclosure action on the Property and never noticed Appellant or included Appellant as a necessary party. (A847)[3]

Schneider's goal in acquiring the mortgage was to clear the title to the Debtor's Property of Appellant's mortgage and develop it. This is evidenced by the permits he filed for the Property which named the *alter ego*, 307-309 Sixth Avenue as the Property owner. (A309) He attempted to take the Property free and clear and avoid being subject to a claim for *de facto* merger by conducting a foreclosure without providing notice to Appellant. When the sale was halted by Appellant's bankruptcy filing, Schneider caused the Debtor to file a bogus bankruptcy and

---

[2] The relevant facts are summarized here but in the interest of avoiding repetition Appellant refers to the facts and evidence that are described and identified in greater detail in Appellant's District Court brief and reply brief. (A47-A56, A1721).

[3] At this time the Debtor's principals and related parties were released from personal guarantees under the first mortgage without any identifiable source of consideration for this release. (A1316)

3

orchestrated a sham sale to accomplish his goal. The Debtor and its bankruptcy were financed by its *alter ego* at the direction of Schneider and Schneider hired David Goldwasser who he had worked with previously. (A1320) David Goldwasser is a frequent CRO in sometimes controversial bankruptcies.

The Bankruptcy Court applied the wrong legal standard of business judgment for this sale to an insider that required a standard of entire fairness. *ASSF IV AIV B Holdings III, L.P. v. Empire Generating Co., LLC (In re Empire Generating Co., LLC)*, No. 19-CV-5721 (CS), 2020 U.S. Dist. LEXIS 50040, at 35 (S.D.N.Y. Mar. 23, 2020). Both the District Court and the Bankruptcy Court accepted the facts as presented by the Debtor's professionals in the bankruptcy case. They presented facts that made the sale look on its face to be a good faith arm's length transaction. However, if either of these courts considered the evidence provided by Appellant, they would have found that that the property was not marketed as required by the Bankruptcy Code and the sale was not the arm's length

fair transaction presented by the Debtor but collusion by insiders to fix the sale price to avoid paying Appellant's lien.[4,5]

Ultimately Schneider, succeeded in acquiring the Property with a credit bid that was one million dollars ($1,000,000) less than the value of the Property the Debtor stated on the petition. (A1234) If the Property was sold for its market value the surplus would have been paid on Appellant's secured claim. The Sale and Plan were perpetuated in bad faith for the sole benefit of Schneider and his interest in obtaining the Property at an estimated discount of $4,700,000.[6] Accordingly, relief is far from moot or inequitable in this case when Appellant could be made whole by a monetary judgment for this amount.

## SUMMARY OF ARGUMENT

"The primary purpose of equitable mootness is to give courts a tool to avoid disturbing a reorganization plan once implemented." *GLM DFW, Inc. v. Windstream Holdings, Inc. (In re Windstream Holdings, Inc.),* 838 Fed. Appx. 634,

---

[4] For example, the District Court's decision references many times that the relief sought by Appellant would prejudice the real estate broker whose commission from the sale was paid in the plan. If this truly was an arm's length transaction where the real estate broker had marketed the property the commission would have been at least $270,000. However, as with all of the parties involved in this transaction, the realtor was complicit in the collusive agreement to fix the sale price and therefore, never truly marketed the property and agreed to accept a mere $30,000. The evidence of this was documented in Appellant's reply brief. (A1730)

[5] The District Court also references a $83,366 lien to New York State which the Debtor later disclosed was about $1,152. (A1638) This painted a much different view of the effect on "third parties" to this sale.

[6] This figure is estimated by Appellant based on the petition value of $14,500,000 less the $9,800,000 that 307-309 paid for the note and transfer of the Property.

636 (2d Cir. 2021). Critics of the doctrine of equitable mootness argue that it encourages inequitable conduct by reducing the opportunity for appellate review, giving the debtors themselves the ability to moot appeals, and inviting a rush to consummate unlawful plans. *See e.g.* Bruce A. Markell, *The Needs of the Many: Equitable Mootness' Pernicious Effects*, 93 AM. BANKR. L. J. 377, 381 (2019); Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances*, 100 TEX. L. REV. 1079, 1121 (2022).

However, this Court has found the doctrine's application is necessary to ensure that there can be some finality in complex restructuring plans and to avoid an unmanageable, uncontrollable situation for the bankruptcy court. *GLM DFW, Inc. v. Windstream Holdings, Inc. (In re Windstream Holdings, Inc.)*, 838 F. App'x 634, 637 (2d Cir. 2021). It falls on the courts exercising appellate review to carefully balance this need for finality with the rights of a party to seek review of a bankruptcy order. *Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 240 (5th Cir. 2009). "Equitable mootness applies to specific claims, not entire appeals and must be applied with a scalpel rather than an axe." *R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 481-82 (2d Cir. 2012) (citing *Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 240 (5th Cir. 2009)(Equitable mootness applies when a judicial ruling might have

too much effect on the parties to a confirmed reorganization). The case at hand is not complex nor does it involve numerous parties.

The District Court abused its discretion by applying the Doctrine of Equitable Mootness in this case. It is unclear why the District Court determined that Appellant did not seek a stay of the sale order when it also cited that there were multiple motions in the record where the Appellant sought a stay of the sale order and Appellant was even granted a stay of the sale briefly. (A804, A713, A688). The Appellant's lack of success in obtaining the stay of the sale does not warrant dismissal for equitable mootness. *R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 484 (2d Cir. 2012) (citing *Chateaugay II*). The District Court's decision seems to suggest that Appellant should have sought another stay from the District Court. (SPA7) However, the sale had already closed on August 3, 2024, so there was nothing to stay at this juncture.

The decision by the District Court to apply the doctrine of equitable Mootness in dismissing the Appeal also failed to consider two critical facts of this case. First, that the appeal was not actually moot because Appellant's lien could simply be paid based on the true value of the Property; and second, that given the evidence of bad faith by the Debtor equity demands the relief in light of fairness concerns. By failing to consider these facts the decision of the District Court missed the threshold question required before abstaining on the basis of equitable

7

mootness, whether a particular remedy can be granted without unjustly upsetting the Debtor's plan of reorganization. *R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 479 (2d Cir. 2012).

## STANDARD OF REVIEW

In the Second Circuit dismissals based on equitable mootness are reviewed for an abuse of discretion. *Id*. This Court stated "[i]t is generally considered inappropriately harsh to deny relief to which one is entitled on the purportedly equitable ground that the unfair (or illegal) plan has been put into effect, especially where a creditor took all appropriate steps to secure judicial relief. In such a case, we have held that it is proper to provide relief if it is at all feasible." *Apollo Glob. Mgmt., LLC v. Bokf, NA (In re MPM Silicones, L.L.C.)*, 874 F.3d 787, 805 (2d Cir. 2017) (internal quotations omitted). Therefore, the Court should find that there was an abuse of discretion by the District Court if Appellant took appropriate steps to secure judicial relief. *Id.*

The District Court cited this Court stating that "[e]quitable mootness appeals arise in a somewhat different procedural posture: in an equitable mootness dismissal, the district court is not reviewing the bankruptcy court at all, but exercising its own discretion in the first instance." *R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 483 (2d Cir. 2012). However, the District Court overlooked the instructions in the next sentence of that

8

case where this Court went on to say, "[i]n so doing, the district court may rely on the bankruptcy court's factual findings, unless clearly erroneous, and if necessary, receive additional evidence." *Id.* The District Court made no specific reference to any factual findings by the Bankruptcy Court with respect to the purchaser being an insider nor did the District Court note that the Bankruptcy Court appeared to overlook the evidence of this offered by Appellant.

A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Pursuit Holdings (NY), LLC v. Piazza (In re Pursuit Holdings (NY), LLC)*, 845 F. App'x 60, 61-62 (2d Cir. 2021). Indeed, the Bankruptcy Court failed to make the relevant factual finding that the purchaser of the Debtor's Property was clearly an insider despite Appellant providing testimony that its principal shared an office with Schneider and took direction from Schneider on all matters concerning the Debtor. (A1733, A1137) The failure to identify the purchaser as an insider resulted in the Bankruptcy Court applying the wrong legal standard of business judgment where the entire fairness standard was required.

While the Bankruptcy Court allowed Appellant a brief stay of the sale to conduct 2004 examinations of the Debtor's insiders, it failed to stay the sale long enough to review the testimonial evidence from these examinations which established the presence of nearly every factor this Court considers to determine

9

the existence of bad faith resulting from insider and *alter ego* relationships.[7]

Schneider had undisclosed fee arrangements with the Debtor's owner with respect

to various services including services related to the Sale.[8] The tactics of Schneider

and the Debtor's professionals used to rush the sale and avoid scrutiny succeeded.

They were able to evade the Bankruptcy Court's review and by relying on the

Bankruptcy Court's determination the District Court also based its ruling on an

erroneous view of the evidence.

Furthermore, the record illustrates that this case did not involve a

sufficiently complex bankruptcy reorganization such that dismissal on the basis of

equitable mootness would be appropriate by the District Court. *One2One

Communs., LLC v. Quad/Graphics, Inc.*, 805 F.3d 428, 436 (3d Cir. 2015).

Therefore, the case must be remanded because the District Court abused its

discretion.

---

[7] In determining an *alter ego* relationship, the courts in the Second Circuit considers factors which include the interrelation of operations, common management, centralized control, and common ownership, the use of common office facilities and equipment, and family connections between or among the various enterprises. See e.g. *Trs. of the Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. High Performance Floors, Inc.*, 233 F. Supp. 3d 329 (E.D.N.Y. 2017).

[8] (A1138) [Tsirkin Transcript p18].

## ARGUMENT

### 1. THE DISTRICT COURT ERRED IN ITS APPLICATION OF METROMEDIA AND THE CHATEAUGAY FACTORS.

#### A. Equitable Mootness Required Review of The Merits.

In *Metromedia* the Second Circuit acknowledged that when determining equitable mootness, it is often ***essential*** to look to the merits of the case. *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network)*, 416 F.3d 136, 144 (2d Cir. 2005) (emphasis added). The District Court did not conduct any such review. An assessment of the merits would have shown that Appellant is likely to prevail on the merits because the Bankruptcy Court's application of the business judgment standard was a clear error where the transaction was between insiders and the correct standard was entire fairness. *ASSF IV AIV B Holdings III, L.P. v. Empire Generating Co., LLC (In re Empire Generating Co., LLC)*, No. 19-CV-5721 (CS), 2020 U.S. Dist. LEXIS 50040, at 35 (S.D.N.Y. Mar. 23, 2020).

#### B. Appellant Made Diligent Efforts to Seek a Stay.

In applying *In re Metromedia* as a basis to dismiss the Appeal, Judge Swain over looked two important distinctions between the facts of that case and this one. *See id.* First, Judge Swain failed to acknowledge that Appellant diligently sought a stay of the sale of the Debtor's sale of the Property. Appellant not only filed its own bankruptcy to stay a fraudulent foreclosure action by Appellee, Appellant

11

subsequently filed two motions in the Bankruptcy Court at docket numbers 46 and 47 seeking to stay the sale of the Property in the Bankruptcy Court and Appellant also objected to the hearing of the Debtor's plan of reorganization prior to a proper review of the sale and filed a motion to reconsider the order approving the sale. (A804, A713, A688)

### C. Avoidance of A Lien Under 363(f) Has A Simple Monetary Remedy and There was No "Comprehensive Change in Circumstances".

Second, Judge Swain failed to recognize that *Metromedia* and similar cases where the courts have found equitable mootness appropriate involved unscrambling a complex plan of reorganization involving hundreds of parties. In these situations like those where courts have cautiously applied the doctrine because the plans became extremely difficult to retract. *In re One2One Communications, LLC*, 805 F.3d 428, 434 (3d Cir. 2015).

In *Metromedia* the Court acknowledged it may be impossible to unwind the appellants releases from the other parties releases in the plan. *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005). This case was a two-party dispute and not just because "all other creditors had voted to accept the plan" as the decision states, but rather because there truly were no other parties whose rights or interests would be prejudiced by the approval of the sale for less than market value.

12

Appellee's Motion to Dismiss the appeal did not identify any parties that would have been prejudiced by the relief sought in the appeal nor did it claim that the purchaser of the property is unrelated to the Debtor. (A1675) Appellee did not identify any unrelated parties simply because there were none. The fact that the purchaser was an insider was also clearly established by the 2004 testimony. (A1733)

### D. Appellant Satisfied the *Chateaugay* Factors.

In the Second Circuit if a reorganization plan has been substantially consummated, there is a presumption that an appeal of that plan is equitably moot. *In re BGI, Inc.*, 772 F.3d 102, 104 (2d Cir. 2014). The Appellant submits that substantial consummation of a plan is much less meaningful in a simple case like this where there was a single property, and the plan consisted of nothing more than selling that property. Much of the case law applying this doctrine discusses the effect of the confirmation of a plan on the contractual rights of third parties. The only party whose rights were modified and extinguished by confirmation of the plan in this case was Appellant.

The presumption of equitable mootness is rebutted if five factors first identified in *Chateaugay II* are met. They are, where: (i) effective relief can be ordered; (ii) relief will not affect the debtor's re-emergence; (iii) relief will not unravel intricate transactions; (iv) affected third-parties are notified and able to

13

participate in the appeal; and (v) appellant diligently sought a stay of the objectionable order. *Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 953 (2d Cir. 1993).

The District Court stated Appellant failed to establish the *Chateaugay* factors. However, respectfully, the District Court failed to look at any of the evidence put forth by Appellant. Appellant's briefs established each factor as follows. (A41, A1738)

## 1. The First *Chateaugay* Factor Is Satisfied Because Monetary Relief Can Be Granted.

With respect to the first factor, the District Court claims that Appellant did not explain the basis upon which it would be entitled to monetary relief. *Sei Insieme LLC v. 307 Assets LLC (In re 307 Assets LLC)*, 665 B.R. 214 (S.D.N.Y. 2024). Appellant's briefs filed in the District Court explained at length the legal basis and provided evidence that the sale to an insider of the Debtor was made in bad faith.

The attached testimony from 2004 examinations, despite being in the record, were not considered by the Bankruptcy Court. (A1299, A1120) This testimony explained the control and undue influence that Schneider exercised over both the Debtor and the first mortgage holder. (A1288) The testimony detailed how the principals shared office space, bank accounts and the entities were *alter egos*. (A1309, A1133) There was also testimonial evidence that the insiders agreed to fix

14

the price, that the real estate agent chilled potential bidders and the real estate agent was guaranteed payment if the Debtor's insider credit bid and purchased the Property. (A1138)

It would not be inequitable as the District Court states to reverse this sale that was the result of collusion, in fact, the reversal of the sale is what equity demands. However, the District Court declined to consider any of this in favor of abstaining, finding it would be inequitable based on the completely unfounded assertions that Appellant did not seek a stay and that third parties would be jeopardized.

If the District Court was referring to the source of monetary relief itself, rather than the legal basis for the relief, the removal of Appellant's lien from the Property can be easily remedied without reversing the sale by reinstating the lien or requiring payment of the lien. *See e.g. Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 34. An appeal is not equitably moot as to lien-stripping under § 363(f) if reversing the lien-stripping raises neither the issue of complexity nor the issue of negative impact on third parties. *Id.* Appellant's reply brief calculated the discount that Schneider achieved by his self-dealing and this amount could easily be awarded to the Appellant.

This Court has held that "equitable mootness is a practical doctrine that requires courts to consider the *actual effects* of the relief requested on a debtor's

emergence from bankruptcy. *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482 (2d Cir. 2012). Appellant has put forth evidence that the sale was to an insider of the Debtor. (A1733) There is no independent third party that would actually be affected by the relief Appellant is seeking. Appellant seeks damages because the Debtor's insider transaction defrauded it and deprived it from recovering on its lien interest from the value of the Property because this is a viable claim for damages the relief is not impossible to grant. *R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 484 (2d Cir. 2012) Accordingly, there is no negative impact on third parties and the first *Chateugay* factor was satisfied.

The District Court did not specifically address the Appellant's satisfaction of the second and third *Chateugay* factor. The second factor was satisfied by Appellant because the Debtor sold it sole asset and was not going to re-emerge. The third factor was also satisfied by Appellant because there were no intricate transactions to unravel. The Debtor's property was transferred pursuant to the sale and all payments made were incidental thereto or costs of the bankruptcy itself.

With respect to the fourth factor the District Court states that the relief to Appellant would prejudice the third parties paid in the plan which were the City of New York, the United States Trustee and the real estate broker. However, the relief sought would not affect these *de minimus* administrative expenses that would have necessarily been paid through any sale of the Debtor's property and would be paid

16

before Appellant's claim under any feasible plan. Therefore, it was irrelevant whether these parties received notice of the appeal as any change to the plan or other relief sought by Appellant would not affect them.

The District Court also states Appellant failed to establish these parties received notice of the Appeal. Again, the District Court failed to consider the practical effect if any with respect to these third parties. "[T]he question is not whether . . . no third party interests are affected" but whether any effects on third parties would be inequitable.). *R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 484 (2d Cir. 2012) (citing *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869 (9th Cir. 2012). The requirement is that the third parties receive notice *if* they would be *adversely affected* by the modification required to effect the relief Appellant is seeking. *Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 953 (2d Cir. 1993) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92 (4th Cir. 1988)).

### E. Bad Faith Requires an Exception to Equitable Mootness

The District Court noted that in response to Debtor's motion to dismiss the Appellant equated the statutory codification of equitable mootness in 11 U.S.C. §363(m) with the independent application of the doctrine of equitable mootness

that has been established by case law.[9] While both doctrines aim to protect the finality of bankruptcy sales and reorganizations, statutory mootness under § 363(m) focuses on the validity of the sale itself. Equitable mootness, on the other hand, considers the broader implications of granting relief on the reorganization plan and third parties who have relied on the sale order.

Nevertheless, the fundamental principle underlying both statutory and equitable mootness is to ensure fairness. In the interest of fairness congress made an exception to the statutory application of mootness where there is bad faith. Respectfully, the doctrine of equitable mootness should likewise not apply when there is evidence of bad faith. There is support for this exception in the early case law credited for establishing the doctrine of equitable mootness. *See In re Roberts Farms, Inc.*, 652 F.2d 793, 796-97 (9th Cir. 1981).

The bad faith in this case is evident. Allowing the appeal to be dismissed on the basis of equitable mootness undermines the goal of promoting fairness and yields an unlawful result which should not stand. Accordingly, this Court must weigh the fairness of dismissing the appeal against the detriment of denying Appellant's right to challenge a sale that resulted from price fixing and collusion.

---

[9] While not decided in the published decision the Supreme Court in MOAC considered arguments for equitable mootness and indicated that it disfavors these kinds of mootness arguments. *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295, 143 S. Ct. 927, 935 (2023).

## CONCLUSION

For the reasons stated above, this Court should vacate the Order and remand to the district court with instructions to decide the appeal on the merits.

Dated: February 7, 2025           Respectfully submitted,

BRONSON LAW OFFICES, P.C.

*/s/ H. Bruce Bronson*
H. Bruce Bronson

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because this brief contains 4,367 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font, size 14.

BRONSON LAW OFFICES, P.C.

*/s/ H. Bruce Bronson*
H. Bruce Bronson

**SPECIAL APPENDIX**

**<u>Table of Contents</u>**

**<u>Page</u>**

Memorandum and Order of the Honorable Laura Taylor Swain,
    dated September 30, 2024 .............................................................    SPA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

                                                Chapter 11
                                                Case No.  23-10027 (JPM)

In re 307 ASSETS LLC,

            Debtor

--------------------------------------------------------x

SEI INSIEME LLC

            Appellant,

      -v-                                       No. 23 Civ. 7942 (LTS)

307 ASSETS LLC,

            Appellee.

--------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

        Pending before the Court are the appeal of Sei Insieme LLC ("Appellant" or

"Sei") of the "Order Confirming Chapter 11 Plan" (docket entry no. 1 (the "Appeal")), issued by

the Bankruptcy Court for the Southern District of New York on August 21, 2023, and the motion

of 307 Assets LLC ("Appellee" or "307 Assets") to dismiss the Appeal as equitably moot.

(Docket entry no. 10 (the "Motion").)  The Court has jurisdiction of this appeal pursuant to 28

U.S.C. section 158(a).

        The Court has reviewed carefully the parties' submissions and, for the following

reasons, grants Appellee's motion to dismiss the Appeal.[1]

---

[1]     Having reviewed the briefs and the record, the Court finds that oral argument is
        unnecessary because the facts and legal arguments are adequately presented in the briefs,
        and the decisional process would not be significantly aided by oral argument.  FED. R.
        BANKR. P. 8019(b).

<u>B<small>ACKGROUND</small></u>

The following summary of relevant facts is drawn from the parties' moving papers, the record, and from filings in the foreclosure action against 307 Assets, captioned <u>CREIF II Lender NE LLC v. 307 Assets LLC et al.</u>, Index No. 850138/2020 (the "Foreclosure Action"), initiated in the Supreme Court of the State of New York, New York County, and Sei's chapter 11 bankruptcy petition, captioned <u>In re Sei Insieme LLC</u>, No. 22-11670 (JPM) (the "Sei Bankr. Case"), also filed in the Bankruptcy Court for the Southern District of New York. <u>See</u> <u>Anderson v. Rochester-Genesee Reg'l Transp. Auth.</u>, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (gathering case law for proposition that courts may take judicial notice of court records in related proceedings).

Sei was formed on March 6, 2012, for the purpose of owning the property located at 307-309 Sixth Avenue, New York, NY (the "Property"). (Docket entry no. 7 ("App't Brief") ¶ 1.) The Property was sold on or about August 4, 2017, by Sei and its sister company to 307 Assets for $17,000,000. (<u>Id.</u> ¶ 2.) In order to finance the purchase, 307 Assets took a mortgage of approximately $8 million in funds secured by a note to Creif 135 LLC (the "Creif Mortgage"). (<u>Id.</u> ¶ 3.) Sei and its sister company took back a purchase money mortgage in the amount of $5 million. (<u>Id.</u> ¶ 4.) The mortgage held by Creif 135 LLC was assigned to an affiliate, Creif II Lender NE LLC, on September 5, 2017. (Foreclosure Action, NYSCEF doc. no. 2 ("Foreclosure Action Complaint") ¶¶ 22, 28.)

The State Foreclosure Action

Following 307 Assets' default on the Creif Mortgage, Creif II Lender NE LLC initiated foreclosure proceedings against 307 Assets on September 24, 2020, in the Supreme Court of the State of New York, County of New York. (<u>See</u> App't Brief ¶ 5; Foreclosure Action

Complaint.)  While the foreclosure proceedings were pending, the Creif Mortgage was assigned to 307-309 Sixth Avenue LLC (the "First Mortgagee"), which was then substituted as a plaintiff in the Foreclosure Action.  (App't Brief ¶ 7 (citing A000047 of the certified record); <u>see also</u> Foreclosure Action, NYSCEF doc. no. 18.)  On June 1, 2022, the Supreme Court signed a judgment for foreclosure and sale of the Property.  (Foreclosure Action, NYSCEF doc. no. 54.) The judgment was in the amount of approximately $13.6 million dollars.  (<u>Id.</u> at 3-4)

Also in June of 2022, George Filioupolos, beneficial owner of 307 Assets, transferred ownership of the Property to an entity named 307-309 Sixth Owner LLC.  (Docket entry no. 8 ("App'ee Brief") at 11.)  On October 25, 2022, the referee appointed by the Supreme Court in the Foreclosure Action entered notice that the Property would be sold at public auction, scheduled to take place on December 14, 2022.  (<u>Id.</u> at 12; Foreclosure Action, NYSCEF doc. no. 58.)

The Sei Bankruptcy Case

On December 13, 2022, Sei filed a chapter 11 bankruptcy petition to "protect its interest in the Property."  (App't Brief ¶ 10; Sei Bankr. Case, docket entry no. 1.)  Sei had used its second mortgage on the Property "as part of the collateral for another loan pursuant to a collateral assignment to The Galinn Fund LLC."  (Sei Bankr. Case, docket entry no. 2 ¶¶ 3-4.) Although The Galinn Fund LLC had been named and served in the Foreclosure Action, Sei had not.  (<u>See</u> Foreclosure Action Complaint; Sei Bankr. Case, docket entry no. 13 ¶ 7.)  Sei moved for a temporary restraining order ("TRO") in the Sei Bankruptcy Case on December 14, 2022, seeking a stay of the foreclosure sale scheduled for that afternoon.  (Sei Bankr. Case, docket entry no. 2.)  Sei was heard on the TRO motion the same day, December 14, 2022, at a remote conference at which representatives for Appellant and the First Mortgagee were present.  (Sei

Bankr. Case, docket entry no. 11.)  The Bankruptcy Court issued a fourteen-day TRO at the close

of the December 14, 2022, hearing.  (Id. at 17.)

The 307 Assets Bankruptcy Case

On January 9, 2023, 307 Assets filed a petition for chapter 11 bankruptcy in the

Bankruptcy Court for the Southern District, captioned In re 307 Assets LLC, 23-10027 (JPM)

(the "307 Assets Bankr. Case").[2]  307 Assets filed a proposed disclosure statement and plan of

reorganization that same day.  (307 Assets Bankr. Case, docket entry nos. 1, 5, 6.)  The sole asset

listed in 307 Assets' petition was the Property, valued at $14.5 million, and its liabilities were

listed as approximately $22.6 million.  (307 Assets Bankr. Case, docket entry no. 1, at 8.)

The proposed plan of reorganization included procedures to sell the Property, and

organized claims into six classes to be paid from sale proceeds as follows: (1) New York City

liens, totaling approximately $83,366, to be paid in full with any applicable interest; (2) the First

Mortgagee, 307-309 Sixth Avenue LLC, totaling $15,077,472, to be paid up to the allowed

amount of the Class 2 Claim, after payment of administrative expenses, priority tax claims, Class

1 Claims, and Class 4 Claims, with any deficiency after the Property sale to be treated as a Class

5 Claim; (3) the Second Mortgagee, i.e., Sei and its sister company, totaling approximately

$7,500,000, to be paid up to the allowed amount of the Class 3 Claim, after payment of

administrative expenses, priority tax claims, Class 1 Claims, Class 2 Claims, and Class 4 Claims,

with any deficiency after Property sale to be treated as a Class 5 Claim; (4) priority claims under

11 U.S.C. section 507(a)(2)-(7), totaling approximately $0, to be paid in full, plus interest at the

applicable statutory rate; (5) general unsecured claims, totaling approximately $38,500, to be

---

[2]     For ease of reference, the Court cites to the corresponding docket entry number of the
filings in the 307 Assets Bankruptcy Case.  All documents cited were included in the
certified appellate record.

paid up to the allowed amount of Class 5 Claims, after payment of administrative expenses, priority tax claims, and Class 1, 2, 3, and 4 Claims; and (6) interest holders, to be paid after payment of administrative expenses, priority tax claims, and Class 1, 2, 3, 4, and 5 Claims. (307 Assets Bankr. Case, docket entry no. 5, at 6-10.) The proposed plan also stipulated that all outstanding United States Trustee fees shall be paid as they come due. (Id. at 9.) On January 24, 2024, 307 Assets moved for an order approving the disclosure statement and sale procedures proposed in connection with the proposed plan of reorganization. (307 Assets Bankr. Case, docket entry no. 17.)

Following Sei's objections, 307 Assets filed revised disclosure statement and plan documents, clarifying relationships between the various individuals and entities party to the 307 Assets Bankruptcy Case, and an application to employ Meridian Capital Group ("Meridian") as a real estate broker for the Property. (307 Assets Bankr. Case, docket entry nos. 26, 28, 32; docket entry no. 33 (the "Amended Plan").) The proposed sale procedures for the Property and distribution of proceeds to claimants otherwise remained the same. (See Amended Plan.) By order dated April 10, 2023, the Bankruptcy Court approved the amended disclosure statement and sale procedures for the Property, and set the sale date for June 19, 2023. (307 Assets Bankr. Case, docket entry no. 34.)

Sei filed a motion for reconsideration (307 Assets Bankr. Case, docket entry nos. 36-37), arguing that the date set for the sale was not sufficient to allow the broker to obtain the best price, and an ex parte application for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to allow Sei to conduct an examination of, and demand production of documents or files from, various individuals party to the 307 Assets Bankruptcy Case. (307 Assets Bankr. Case, docket entry no. 40.) Sei thereafter filed a motion seeking a stay of the

scheduled sale of the Property, both to allow additional time to market the property and to allow Sei to conduct the Rule 2004 examination, and a motion to shorten the time for notice and for a hearing, given that Sei's motion for a stay was filed on June 9, 2023, ten days before the scheduled sale date. (307 Assets Bankr. Case, docket entry nos. 46, 47.) Following a June 15, 2023, hearing, the Bankruptcy Court adjourned the Property sale to July 18, 2023, and the hearing on the Property sale approval and Amended Plan confirmation to August 3, 2023, and granted Sei's motion for Rule 2004 examination.[3] (307 Assets Bankr. Case, docket entry nos. 50, 55, 56.)

On July 25, 2023, following its Rule 2004 examinations of the requested witnesses, Sei filed various objections to confirmation of the Amended Plan. (307 Assets Bankr. Case, docket entry no. 61, at 2.) Sei also initiated an adversary proceeding the day before the confirmation and sale approval hearing was set to take place. (307 Assets Bankr. Case, docket entry no. 69.) The Amended Plan was ultimately confirmed, and the sale approved, by the Bankruptcy Court at the August 3, 2023 hearing, with the Bankruptcy Court finding that 307 Assets had "complied with the applicable requirements of 11 U.S.C. [sections] 1122, 1123, and 1129(a) and (b), and that [307 Assets] ha[d] satisfied the requirements to sell the [P]roperty free and clear of all interests, pursuant to 11 U.S.C. [section] 363, including 363(m)." (307 Assets Bankr. Case, docket entry no. 80 ("Conf. Hrg. Tr.") at 60-61.) At the close of the August 3, 2023 hearing, 307 Assets sought waiver of the automatic fourteen-day stay of the order confirming the Amended Plan, pursuant to Rule 3020(e) of the Federal Rules of Bankruptcy Procedure, which Sei did not oppose, and the Bankruptcy Court granted. (Id. at 61.)

---

[3]     The motion for reconsideration was denied at the June 15, 2023 hearing, without prejudice to Sei's arguments in connection with the motion to stay the sale of the Property. (307 Assets Bankr. Case, docket entry no. 79, at 8.)

# SPA7

The written order confirming the Amended Plan and approving the sale of the Property was entered on August 21, 2023.  (307 Assets Bankr. Case, docket entry no. 70 (the "Confirmation and Sale Approval Order").)  Sei filed a notice of appeal on September 3, 2023 (307 Assets Bankr. Case, docket entry no. 76), seeking to vacate the Confirmation and Sale Approval Order, but did not seek or otherwise obtain a stay pending the instant Appeal.  307 Assets filed a motion to dismiss the Appeal in the instant case on February 13, 2024, asserting that the appeal is equitably moot.  (Docket entry no. 10.)  The Appeal and motion to dismiss the Appeal are now fully briefed.

## Discussion

"Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo."  In re Charter Communs., Inc., 691 F.3d 476, 482-83 (2d Cir. 2012) (citation omitted).  However, "in an equitable mootness dismissal, the district court is not reviewing the bankruptcy court at all, but exercising its own discretion in the first instance."  Id. at 483.  In determining whether an appeal is equitably moot, "the district court may rely on the bankruptcy court's factual findings, unless clearly erroneous, and if necessary receive additional evidence."  Id.

Under the prudential doctrine of equitable mootness, a bankruptcy appeal should be dismissed as equitably moot, even when it is not constitutionally moot, "'when, during the pendency of an appeal, events occur' such that 'even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'"  In re Motors Liquidation Co., 829 F.3d 135, 167 (2d Cir. 2016) (quoting In re Chateaugay Corp. ("Chateaugay I"), 988 F.2d 322, 325 (2d Cir. 1993)).  Equitable mootness is not limited to appeals of orders confirming plans of reorganization, but rather has been applied in a "'range of contexts,' including appeals

involving all manner of bankruptcy court orders." In re Windstream Holdings, Inc., 838 F.

App'x 634, 637 (2d Cir. 2021) (citing In re BGI, 772 F.3d 102, 109 & n.12 (2d Cir. 2014)).

"[D]ismissal is appropriate when the appellant has made no effort to obtain a stay

and has permitted such a comprehensive change of circumstances to occur as to render it

inequitable for the appellate court to reach the merits of the appeal." Chateaugay I, 988 F.2d at

322 (internal quotation marks and citation omitted). In the Second Circuit, "a bankruptcy appeal

is presumed equitably moot when the debtor's reorganization plan has been substantially

consummated." In re BGI, Inc., 772 F.3d at 108. Under the Bankruptcy Code, "substantial

consummation" consists of:

> (A) transfer of all or substantially all of the property proposed by the plan
> to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the
> plan of the business or of the management of all or substantially all of the
> property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C.A. § 1101(2) (Westlaw through P.L. 118-82).

To obtain relief in these circumstances, a claimant must demonstrate that its

requested relief is nevertheless warranted by establishing each of the so-called "Chateaugay II

factors":

> [1] the court can still order some effective relief;
> [2] such relief will not affect the re-emergence of the debtor as a
> revitalized corporate entity;
> [3] such relief will not unravel intricate transactions so as to knock the
> props out from under the authorization for every transaction that has taken
> place and create an unmanageable, uncontrollable situation for the
> Bankruptcy Court;
> [4] the parties who would be adversely affected by the modification have
> notice of the appeal and an opportunity to participate in the proceedings;
> and
> [5] the appellant pursued with diligence all available remedies to obtain a
> stay of execution of the objectionable order[,] if the failure to do so creates
> a situation rendering it inequitable to reverse the orders appealed from.

In re BGI, Inc., 772 F.3d at 108 (citing In re Chateaugay Corp. ("Chateaugay II"), 10 F.3d 944, 952-53 (2d Cir. 1993)).

Courts have also applied the Chateaugay II factors in analyzing whether an appeal of an unstayed bankruptcy transaction is equitably moot due to a "comprehensive change in circumstances." See, e.g., In re PC Liquidation Corp., No. 06-CV-1935-SJF, 2008 WL 199457, at *5 (E.D.N.Y. Jan. 17, 2008), cited with approval in In re BGI, Inc., 772 F.3d at 109; see also, e.g., In re RS Old Mill LLC, No. 20-CV-743-VB, 2020 U.S. Dist. LEXIS 82039, at *11-12 (S.D.N.Y. May 8, 2020) (noting "[t]here is a 'strong presumption' that an appeal of an unstayed order is moot," which "may only be overcome when each of the [Chateaugay II factors] are present" (citation omitted)).

307 Assets argues that Sei's appeal is equitably moot because "(i) the Debtor and Purchaser closed on the Property sale, (ii) the Plan was consummated, (iii) Appellant sought no stay, and (iv) Appellant served no affected party but the Debtor with notice of the appeal." (Motion at 1-2.) 307 Assets further notes that it has paid all amounts due under the Plan, including Bankruptcy Court-approved legal fees, real estate broker fees, claims made by the City of New York, and amounts due to the United States Trustee (id. at 3), and has also provided records demonstrating that, post-confirmation, the deed for the Property was transferred pursuant to the Amended Plan, and the Property has since been encumbered with a new mortgage lien. (Id. at 5-46.)

Sei does not contest the assertion that the Amended Plan has been substantially consummated, but rather argues that the appeal is "primarily concerned with the approval of the sale of the Property by the Confirmation Order pursuant to 11 U.S.C. § 363," and is not equitably moot, per the language of 11 U.S.C. section 363(m), because "the sale [of the Property] was

conducted in bad faith." (Docket entry no. 12 ("Sei Reply Brief") at 7-8.) Sei alternatively

argues that, even looking to the <u>Chateaugay II</u> factors, its appeal is not equitably moot because

(i) effective relief can be granted by either reversing the sale or granting Sei a monetary award;

(ii) 307 Assets has sold all of its assets and is not intending to re-emerge; (iii) there was only one

transaction, the Property sale, and it "did not have intricacies which would be difficult to

unravel"; (iv) there are "no other true parties in interest" that would require notice as the

"Bankruptcy Court correctly determined this was a two-party dispute"; and (v) Sei opposed the

Amended Plan and sale of the Property at several points throughout the 307 Assets Bankruptcy

Case. (Docket entry no. 13 ("Sei Resp. Brief") at 2-4.)

        As to Sei's first argument, the doctrine of equitable mootness calls for an analysis

separate from the statutory limitation on appeals found in Section 363(m).[4] The doctrine looks

to whether implementation of requested relief would be <u>inequitable</u>, not whether such relief

could otherwise be conceivably fashioned, <u>Chateaugay I</u>, 988 F.2d at 325, and "applies to

appeals of sale orders [under Section 363] as well as appeals from orders confirming plans of

reorganization." <u>In re Leatherstocking Antiques, Inc.</u>, No. 12-CV-7758-ER, 2013 WL 5423995,

at *4 (S.D.N.Y. Sept. 27, 2013) (citing <u>In re Motors Liquidation Co.</u>, 428 B.R. 43, 60 n.26

(Bankr. S.D.N.Y. 2010)). Thus, Sei's characterization of its appeal as an appeal of the sale

approval pursuant to Section 363, as opposed to the confirmation of the Amended Plan itself,

---

[4]    Sei appears to suggest that the recent Supreme Court decision in <u>MOAC Mall Holdings LLC v. Transform Holdco LLC</u>, 598 U.S. 288 (2023), precludes a finding that an appeal from a sale under Section 363 is equitably moot. (Sei Reply Brief at 7-8; Sei Resp. Brief at 1-2.) This argument conflates what courts in the Second Circuit had previously referred to as "statutory mootness" under Section 363(m) with the doctrine of "equitable mootness." The decision in <u>MOAC</u> invalidated only the former line of argumentation, finding that Section 363(m) contained a statutory <u>limitation</u>, rather than a jurisdictional bar. <u>MOAC</u>, 598 U.S. at 299-301, 304.

will not preclude review for equitable mootness even if such characterization were appropriate. Scrutiny for equitable mootness is particularly warranted in this case, where Sei does not contest that the Amended Plan has been substantially consummated, and Sei's failure to seek or obtain a stay of the Confirmation and Sale Approval Order left unimpeded the transfer pursuant to the Confirmation and Sale Approval Order of the sole asset of the debtor, the Property, and its subsequent encumbrance with a new mortgage lien. In re LSC Communs., Inc., 631 B.R. 818 (Bankr. S.D.N.Y. 2021) (courts in the Second Circuit look for equitable mootness when an unstayed order results in a "'comprehensive change in circumstances' and when a reorganization is 'substantially consummated'" (citations omitted)); see also In re Leatherstocking Antiques, Inc., 2013 WL 5423995, at *4 (noting there is a "strong presumption" that an appeal of an unstayed order is moot where "sale of real property has closed" (citations omitted)).

Turning then to the Chateaugay II factors, the Court finds that Sei has failed to meet its burden to establish each factor is present, such that the Confirmation and Sale Approval Order should be disturbed.  Beginning with the fifth and arguably most important factor, Sei failed, as noted, to pursue with diligence a stay of the "objectionable order," i.e., the Confirmation and Sale Approval Order.  See In re MPM Silicones, L.L.C., 874 F.3d 787, 804 (2d Cir. 2017) ("Although we require satisfaction of each Chateaugay II factor to overcome a mootness presumption, we have placed significant reliance on the fifth factor, concluding that a 'chief consideration under Chateaugay II is whether the appellant sought a stay of confirmation.'" (citation omitted)).  As a result, the Amended Plan has been all but fully implemented, with the Property transferred and subsequently encumbered with a new lien, and all amounts due under the Amended Plan paid, including claims with greater priority and Bankruptcy Court-approved legal fees and real estate broker fees.  (Motion at 3-4; App'ee Brief

at 10-11; 307 Assets Bankr. Case, docket entry nos. 81-83.)  At no point did Sei seek to prevent the confirmed Amended Plan, including the close of the Property contemplated by the Amended Plan, from going into effect.

Sei argues that its inaction in seeking a stay was justified based on its perception that "the Bankruptcy Court was not going to stay the confirmation of the Plan which approved the Sale" in light of Sei's prior, unsuccessful attempts to oppose the Amended Plan and Property sale.  (Sei Resp. Brief at 3-4.)  The Second Circuit has repeatedly rejected this line of argument, and "insist[s] that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one."  In re Metromedia Fiber Network, Inc., 416 F.3d 136, 144 (2d Cir. 2005) (citing Chateaugay I, 988 F.3d at 326).  The great weight placed on this factor is in recognition of the fact that, in bankruptcy proceedings, "the ability to achieve finality is essential to the fashioning of effective remedies," and that "acts of reliance on unstayed bankruptcy confirmation orders should not be 'routinely vulnerable to nullification'" in order to promote successful debtor reorganizations.  In re Fiorano Tile Imps., Inc., 517 B.R. 409, 416 (Bankr. E.D.N.Y. 2014) (quoting Chateaugay I, 988 F.2d at 325-26).

Sei argues that, under the first Chateaugay II factor, effective relief from the unstayed order can nonetheless be fashioned because the Property sale could be reversed, or Sei could be awarded monetary relief.  (Sei Resp. Brief at 3.)  As to a monetary award, Sei does not explain the basis upon which it would be entitled to monetary relief in this appellate posture.  As to the reversal of the sale, even if such relief were possible, it would clearly be inequitable to the First Mortgagee at this juncture to reverse the sale of the Property, which is now encumbered with a new mortgage lien, and to force the First Mortgagee to unwind its transactions following the close of sale.  In re Metromedia Fiber Network, Inc. 416 F.3d at 145 ("In the absence of any

request for a stay, the question is not solely whether we <u>can</u> provide relief without unraveling the Plan, but also whether we <u>should</u> provide such relief in light of fairness concerns." (emphasis in original)).  Such relief would also unravel the Amended Plan, to the prejudice of the City of New York, the United States Trustee, and the real estate broker who oversaw the Property sale, all of whom were paid in accordance with the Amended Plan following its confirmation.  (Motion at 3-4; 307 Assets Bankr. Case, docket entry nos. 81-83.)  Nor does Sei establish, with regard to the fourth <u>Chateaugay</u> factor, whether these entities and the First Mortgagee have been notified of the instant appeal, such that their opposition to the appeal, if any, could have been heard.[5]

In sum, Sei has failed to meet its burden to establish each of the <u>Chateaugay II</u> factors.  Accordingly, Sei is unable to overcome the presumption that the instant appeal is equitably moot.  The Amended Plan has been substantially consummated, and Sei's failure to seek or obtain a stay of the Sale approval has resulted in a comprehensive change of circumstances, such that reversal of the Sale would now be inequitable to the debtor and affected parties under the Amended Plan.  The Court therefore grants 307 Assets' motion to dismiss the instant appeal on equitable mootness grounds.

CONCLUSION

For the foregoing reasons, the motion to dismiss the Appeal as equitably moot is granted.

---

[5]     Sei argues that such notification is unnecessary because "the Bankruptcy Court correctly determined this was a two-party dispute."  (Sei Resp. Brief at 3.)  However, the Bankruptcy Court only characterized the dispute as a "two-party dispute" at the confirmation hearing for the Amended Plan because, by that time, "all other credit creditors ha[d] voted to accept the plan and no other party in interest ha[d] filed an objection," save for Sei.  (Conf. Hrg. Tr. at 58.)

This Memorandum Order resolves docket entry no. 10.  The Clerk of Court is respectfully directed to close this case.


SO ORDERED.

Dated: New York, New York                    /s/ Laura Taylor Swain
       September 30, 2024                    LAURA TAYLOR SWAIN
                                         Chief United States District Judge